UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————x

DENIS JOSUE YANEZ MATUTE,

    *Petitioner,*

                                        A No. 205-516-379

v.

KEN GENALO, New York Field Office Director,

Enforcement and Removal Operations, U.S. Immigration

and Customs Enforcement;

TODD LYONS, Director, U.S. Immigration and Customs

Enforcement;

MARKWAYNE MULLIN, Secretary of the U.S.

Department of Homeland Security;

TODD BLANCHE, Acting Attorney General of the United State and,

WARDEN, NASSAU COUNTY CORRECTIONAL CENTER,

East Meadow, New York,

    *Respondents.*

———————————————————————x

**PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241 AND
EMERGENCY MOTION FOR ORDER TO SHOW CAUSE AND TEMPORARY
RESTRAINING ORDER**

**PRELIMINARY STATEMENT**

1. DENIS JOSUE YANEZ MATUTE ("Petitioner"), by counsel, petitions for a writ of habeas corpus under 28 U.S.C. § 2241 and moves by Emergency Order to Show Cause and Temporary Restraining Order. This application is filed on an emergency basis to prevent unlawful transfer or removal, preserve this Court's habeas jurisdiction, require Respondents to certify the true statutory and factual cause of detention, and secure Petitioner's release from unlawful custody.

2. Petitioner has not had adequate access to counsel since his arrest. Counsel has not had a meaningful opportunity to confer with Petitioner, obtain the full administrative record, review the arrest and custody paperwork, examine the Notice to Appear, or determine the statutory detention authority DHS claims to invoke. The facts alleged herein are based on the limited information available to

1

counsel, including family interviews, EOIR automated case information screenshots, and information provided by Petitioner's U.S. citizen spouse, Sandra Maribel Yanez, who has petitioned him for his green card.

3. Petitioner does not know under which statutory provision DHS claims authority to detain him. DHS has not produced full custody documents, administrative-warrant records, arrest records, the A-file, a custody determination, or any contemporaneous paperwork sufficient to determine whether DHS purports to proceed under 8 U.S.C. § 1225, § 1226(a), or another provision. Petitioner therefore pleads in the alternative until Respondents produce the record. Alternative pleading is permitted by Federal Rule of Civil Procedure 8(d)(2)-(3). See *Henry v. Daytop Village, Inc.*, 42 F.3d 89, 95-96 (2d Cir. 1994); *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 343 (2d Cir. 1994).

4. Petitioner is a long-present interior resident of New York. He entered the United States on or about October 16, 2012, has lived in this country for more than thirteen years, resides in Elmont, New York, works in New York City, has no criminal record, and supports his spouse and two young children.

5. According to EOIR automated case information available to the family, Petitioner's prior immigration case was dismissed by an Immigration Judge on April 4, 2024, at 26 Federal Plaza, New York, New York. The same automated information reflects that there are no future hearings and that no appeal was received. A prior motion to reopen before the Immigration Judge was granted on or about July 12, 2021. Those records raise a threshold question that Respondents must answer: what lawful authority supports Petitioner's present arrest and detention after dismissal of the prior case?

6. Petitioner was arrested in or near Elmont, New York, while going to a vehicle. On information and belief, officers were waiting for him, threw him to the ground, and detained him. Petitioner's spouse reports that she was holding the couple's baby and that officers pushed her and her sister.

2

7. After the arrest, Petitioner was detained in East Meadow, New York, believed to be the Nassau County Correctional Center. Petitioner was issued a Notice to Appear dated July 2, 2026. Counsel has not yet received the complete NTA, custody determination, warrant, arrest report, or administrative record.

8. Because Petitioner was arrested in the interior many years after entry, and because the available records reflect dismissal of his prior immigration case and no future hearings, Respondents must be ordered to show cause, produce the complete record, preserve all video evidence, and justify the true legal and factual cause of custody under 28 U.S.C. § 2243.

9. Petitioner seeks immediate relief prohibiting transfer outside New York or New Jersey while this action is pending. Transfer would severely limit access to counsel, translators, family, potential witnesses, potential expert witnesses, and video evidence. It would also risk rapid relocation to distant detention centers in places such as Louisiana or Texas, where controlling circuit law may differ from Second Circuit law governing detention, bond, and related custody proceedings. Petitioner has a substantial interest in having the legality of his arrest and detention adjudicated in the jurisdiction where the cause of action arose, where counsel and witnesses are located, and where this Court can provide effective habeas supervision.

10. He is most respectfully seeking immediate release from this Honorable Court; he is *not* seeking a bond hearing because, as explained below, the EOIR of the U.S. Department of Justice itself has, through misguided and illegal precedent -contradicted by hundreds of federal courts throughout the nation- has determined he is not entitled to one, in the *Matter of Yajure-Hurtado*, 29 I. & N. Dec. 216, 216–18, 226–27 (B.I.A. 2025);

11. For those reasons and many others explained below in many cases such as *Rodriguez-Acurio v. Almodovar*, No. 25-cv-06065 (NJC) (E.D.N.Y. Nov. 28, 2025) and the *Gopie v. Lyons*, No. 25-CV-05229, 2025 WL 3167130, at *1 (E.D.N.Y. Nov. 13, 2025), line of EDNY cases, we respectfully ask that Petitioner be excused from exhausting futile administrative remedies, which cannot adequately remedy his arrest, which was illegal from its inception.

12. That is why Petitioner now comes to this Honorable Court seeking that the laws of this nation not be violated by the Respondents by illegally keeping him in prison.

## PETITIONER

13. Petitioner Denis Josue Yanez Matute is a native and citizen of Honduras.

14. Petitioner was born in 1988.

15. Petitioner's Alien Registration Number is A205-516-379.

13. Petitioner resides at 171 Marguerite Avenue, Elmont, New York 11003 which is his fixed address.

14. Petitioner is married to Sandra Maribel Yanez, who has petitioned him for his green card.

15. Petitioner is the father of two young children: Liam Josue Yanez, born July 23, 2018, and Jahir Alessandro Yanez, born August 15, 2023.

16. Petitioner has no criminal record.

17. Petitioner is employed by Punchdown Electrical and Controls Inc., located at 131 Varick Street, Room 1030, New York, New York 10013. He began working there in or about September 2024.

18. Petitioner is a family provider. His children are young and depend on him emotionally and financially. One child receives speech therapy.

19. Petitioner is willing to comply with any lawful release conditions, including ICE reporting, immigration court appearances, supervision, electronic monitoring if ordered, and residence at a stable address.

## IMMIGRATION HISTORY

20. Petitioner entered the United States on or about October 16, 2012.

21. Petitioner has lived in the United States for more than thirteen years.

22a. Petitioner's wife, Sandra Maribel Yanez, has petitioned him for his green card, which had been APPROVED; a copy has been attached here.

22b. Petitioner was not arrested at a port of entry. He was not apprehended at or near the border when ICE arrested him in 2026.

23. Petitioner's prior EOIR automated case information reflects no future hearing scheduled.

24. The EOIR automated case information reflects that an Immigration Judge ordered dismissal on April 4, 2024, at 26 Federal Plaza, New York, New York.

25. The EOIR automated case information further reflects that no BIA appeal was received.

26. The EOIR automated case information also reflects that a motion to reopen before the Immigration Judge was completed on July 12, 2021, and was granted.

27. Petitioner was later issued a Notice to Appear dated July 2, 2026.

28. Counsel has not received the complete NTA, proof of service, custody documents, arrest documents, or DHS records explaining why DHS arrested and detained Petitioner after the prior dismissal.

4

29. Because Petitioner was arrested in the interior more than thirteen years after entry, and because he was not apprehended at or near the border, his detention cannot lawfully be treated as mandatory detention under § 1225(b)(2)(A). *Cunha v. Freden*, No. 25-3141-pr, 2026 WL 1146044 (2d Cir. Apr. 28, 2026).

## THE ARREST

30. On June 17, 2026, ICE officers and/or immigration officers arrested Petitioner in his home in Elmont, New York.

31. According to information provided by Sandra Maribel Yanez, Petitioner was going to a vehicle when officers who were waiting for him stopped and arrested him.

32. On information and belief, the officers threw Petitioner to the ground during the arrest.

33. Ms. Yanez reports that his wife was holding the couple's baby and that officers pushed her and her sister.

35. On information and belief, ICE did not have a judicial warrant authorizing Petitioner's arrest.

36. On information and belief, ICE did not have an administrative warrant naming Petitioner before the arrest, or if such a warrant exists, DHS did not meaningfully serve or explain it to Petitioner or his family at the time of arrest.

37. On information and belief, ICE did not make or serve a contemporaneous individualized custody determination under the correct statute before or at the time Petitioner was taken into custody.

38. On information and belief, ICE did not identify individualized facts establishing that Petitioner was likely to escape before a warrant could be obtained.

39. After the arrest, Petitioner was detained in East Meadow, New York, believed to be at the Nassau County Correctional Center.

40. Petitioner's arrest separated him from his spouse, minor children, job, home, and community in New York.

41. ICE arrest videos may show the location of the encounter, the officers' conduct, whether force was used, what documents were presented, whether agents identified themselves, whether family members were pushed, and whether ICE had any individualized basis to seize Petitioner. Respondents should be ordered to preserve and produce those recordings and any body-worn camera, surveillance, radio, dispatch, target-packet, and arrest records.

## DETENTION AND CONTINUING HARM

42. Petitioner remains in federal immigration custody.

43. Petitioner's detention is a severe deprivation of liberty.

44. Petitioner's detention separates him from his spouse and two young children.

45. Petitioner's detention prevents him from working and supporting his family.

46. Petitioner's detention prevents him from meaningfully assisting counsel in investigating the arrest, obtaining videos, identifying witnesses, reviewing the immigration court record, and preparing any immigration or habeas relief.

47. Petitioner has no criminal record and significant release factors, including long residence, stable address, employment, family ties, two minor children, and willingness to comply with supervision.

5

48. The Government has not provided a lawful and timely individualized custody determination under the correct statute.

49. The Government has not produced the documents necessary to test the legality of custody.

50. Transfer while this habeas action is pending would severely prejudice Petitioner and frustrate meaningful judicial review. Petitioner's arrest and detention arose in this jurisdiction, his retained counsel is located here, his family and witnesses are here, and this Court is the forum presently exercising habeas jurisdiction over the legality of his confinement. A rapid transfer outside New York or New Jersey--particularly to distant detention centers in Louisiana, Texas, or similar jurisdictions-- would sharply limit Petitioner's access to counsel, confidential legal visits, translators, family support, potential witnesses, and potential expert witnesses. It would also place Petitioner in a materially different legal and practical environment, where controlling circuit law governing parallel immigration custody proceedings may differ from the law of the Second Circuit and this District. Petitioner has a substantial interest in having the legality of his arrest and detention adjudicated in the jurisdiction where the cause of action arose, where counsel is available, where relevant witnesses and evidence are located, and where this Court can provide effective habeas supervision. Absent temporary restraint, Respondents could transfer Petitioner without notice and thereby impair counsel's ability to litigate, burden Petitioner's ability to communicate and prepare his claims, and undermine this Court's ability to grant effective relief.

## JURISDICTION, VENUE, AND PARTIES

51. This Court has jurisdiction under 28 U.S.C. § 2241 because Petitioner is in federal custody and challenges that custody as unlawful under the Constitution, statutes, and regulations of the United States.

52. This Court has authority under 28 U.S.C. § 2243 to issue the writ or order Respondents to show cause and to require Respondents to certify the true cause of detention.

53. This Court has authority under the All Writs Act, 28 U.S.C. § 1651(a), to preserve jurisdiction, prevent transfer or removal that would frustrate habeas review, and order appropriate interim relief.

54. Venue is proper in this District because Petitioner was arrested in this District, resides in this District, is detained in East Meadow, New York, and Respondents exercise custody and control over him in this District.

55. Respondent Ken Genalo is sued in his official capacity as the New York Field Office Director for ICE Enforcement and Removal Operations and as a supervisory official responsible for Petitioner's arrest, detention, custody classification, transfer, and removal.

56. Respondent Todd Lyons is sued in his official capacity as Director of U.S. Immigration and Customs Enforcement.

57. Respondent Markwayne Mullin is sued in his official capacity as Secretary of the United States Department of Homeland Security.

58. Respondent Todd Blanche is sued in his official capacity as Acting Attorney General of the United States.

59. Respondent Warden, Nassau County Correctional Center, is sued in official capacity as Petitioner's immediate physical custodian. Counsel will amend or conform the caption if the Government identifies a different immediate custodian or if Petitioner is moved before filing.

## LEGAL FRAMEWORK

6

**A. Habeas requires the Government to identify the real authority for custody.**

60. Habeas protects against unlawful executive detention. The writ is a prompt remedy for unlawful physical restraint. 28 U.S.C. §§ 2241, 2243.

61. The Government must certify the true cause of detention. 28 U.S.C. § 2243.

62. The true cause of detention means the actual legal and factual basis for custody, supported by actual records, not a later litigation theory.

63. Freedom from physical restraint lies at the core of due process. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

64. The ordinary habeas remedy for unlawful executive detention is release. *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

**B. Interior immigration arrests require individualized statutory authority.**

65. The Fourth Amendment applies to civil immigration arrests and seizures inside the United States. *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1043 (1984); *Almeida-Amaral v. Gonzales*, 461 F.3d 231, 234 (2d Cir. 2006).

66. A brief immigration stop requires specific, articulable facts that reasonably warrant suspicion. *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968); *United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975).

67. Perceived race, ethnicity, Hispanic/Latino appearance, or national origin cannot be the sole basis for an immigration stop. *United States v. Brignoni-Ponce*, 422 U.S. at 884-87.

68. A warrantless civil immigration arrest requires both reason to believe that the person is removable and reason to believe that the person is likely to escape before a warrant can be obtained. 8 U.S.C. § 1357(a)(2).

69. DHS regulations provide that a warrant shall be obtained except when the designated immigration officer has reason to believe the person is likely to escape before a warrant can be obtained. 8 C.F.R. § 287.8(c)(2)(ii).

70. Probable cause and statutory arrest authority must exist at the moment of arrest. *Beck v. Ohio*, 379 U.S. 89, 96 (1964). Later paperwork cannot cure an arrest that was unlawful when made. *United States v. Di Re*, 332 U.S. 581, 595 (1948).

**C. Sections 1225, 1226, and 1231 have different functions.**

71. Section 1225 applies to applicants for admission and certain arriving-alien or border-related contexts. 8 U.S.C. § 1225.

72. Section 1226 governs detention during ordinary removal proceedings before a removal order becomes administratively final. 8 U.S.C. § 1226.

73. Section 1226(a) is discretionary. It permits detention or release on bond or conditional parole unless mandatory detention under § 1226(c) applies. 8 U.S.C. § 1226(a)-(c).

74. Section 1226(c) has not been shown to apply because Petitioner has no criminal record and Respondents have not identified any criminal or terrorism-related mandatory-detention ground.

75. The Second Circuit has rejected the Government's broad theory that long-present interior arrestees who entered without inspection are mandatorily detained under § 1225(b)(2)(A). *Cunha v. Freden*, No. 25-3141-pr, 2026 WL 1146044 (2d Cir. Apr. 28, 2026).

7

76. Under Cunha, Petitioner belongs under § 1226(a), not § 1225(b)(2)(A), because he entered on or about October 16, 2012, was not apprehended at or near the border, lived in the United States for years, and was later arrested in the interior in New York.

77. Section 1231 applies only after a removal order becomes administratively final and the removal period begins. 8 U.S.C. § 1231(a)(1)(B); *Johnson v. Guzman Chavez*, 594 U.S. 523, 527-29, 535-36 (2021).

78. Available EOIR automated case information reflects dismissal, no future hearing, and no BIA appeal. Respondents have not produced any record showing that a final removal order supports detention under § 1231.

79. Agencies may not defend an action on new grounds created after the fact. *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943); *Department of Homeland Security v. Regents of the University of California*, 591 U.S. 1, 20-23 (2020).

80. Courts in this Circuit have rejected post-hoc efforts to recharacterize immigration detention authority. See *Yao v. Almodovar*, 813 F. Supp. 3d 461, 476-77 (S.D.N.Y. 2025); *Gopie v. Lyons*, No. 25-CV-05229-SJB, 2025 WL 3167130 (E.D.N.Y. Nov. 13, 2025).

### D. Section 1226(a) requires a real custody decision before or at the time of detention.

81. Section 1226(a) and the implementing regulations require a real, individualized custody determination based on danger and flight risk before or contemporaneous with detention.

82. A later bond process does not necessarily cure the absence of a lawful first custody decision. A bond redetermination assumes that DHS first made a valid custody determination under the correct statute. *Gopie v. Lyons*, No. 25-CV-05229-SJB, 2025 WL 3167130 (E.D.N.Y. Nov. 13, 2025).

83. Courts in this District and the Southern District have ordered release where DHS detained noncitizens without lawful § 1226(a) process at the outset. See *Gopie v. Lyons*, No. 25-CV-05229-SJB, 2025 WL 3167130 (E.D.N.Y. Nov. 13, 2025); *J.U. v. Maldonado*, No. 25-CV-04836, 2025 WL 2772765 (E.D.N.Y. Sept. 29, 2025); *Tumba Huamani v. Francis*, 813 F. Supp. 3d 394 (S.D.N.Y. 2025); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475 (S.D.N.Y. 2025); *Kelly v. Almodovar*, No. 25-CV-6448, 2025 WL 2381591 (S.D.N.Y. Aug. 15, 2025).

### CLAIM ONE

### THE ARREST AND DETENTION VIOLATED THE FOURTH AMENDMENT, 8 U.S.C. § 1357(a)(2), AND DHS REGULATIONS.

84. Petitioner repeats and realleges the preceding paragraphs.

85. ICE arrested Petitioner in the interior of the United States, in or near Elmont, New York.

86. ICE did not present a judicial warrant to Petitioner or his family.

87. On information and belief, ICE did not have individualized facts establishing that Petitioner was likely to escape before a warrant could be obtained.

88. Section 1357(a)(2) is conjunctive. ICE needed reason to believe Petitioner was removable and reason to believe he was likely to escape before a warrant could be obtained.

89. Respondents have not shown either statutory requirement.

90. ICE also failed to comply with 8 C.F.R. § 287.8 and the required warrant and arrest procedures applicable to interior civil immigration arrests.

8

91. Because the arrest was unlawful when made, later charging papers or custody papers cannot cure the Fourth Amendment and statutory defects.

92. The Court should order Respondents to produce all arrest records, body-worn camera footage, surveillance footage, video recordings, radio transmissions, dispatch records, warrants, agent notes, database queries, and supervisory approvals related to Petitioner's arrest.

### CLAIM TWO

### DHS UNLAWFULLY CLASSIFIED OR DETAINED PETITIONER WITHOUT THE § 1226(a) PROCESS REQUIRED FOR A LONG-PRESENT INTERIOR ARRESTEE.

93. Petitioner repeats and realleges the preceding paragraphs.

94. At the time of arrest and initial detention, DHS has not identified the statutory basis for detention.

95. To the extent DHS treated Petitioner as detained under 8 U.S.C. § 1225, that classification was unlawful.

96. Petitioner entered the United States on or about October 16, 2012.

97. Petitioner was not apprehended at or near the border.

98. Petitioner lived in the United States for more than thirteen years before ICE arrested him in New York.

99. Petitioner was arrested in the interior of the United States.

100. Petitioner was not an arriving alien at a port of entry.

101. Under *Cunha v. Freden*, No. 25-3141-pr, 2026 WL 1146044 (2d Cir. Apr. 28, 2026), § 1226(a), not § 1225(b)(2)(A), governs this type of interior arrest.

102. DHS's erroneous reliance on § 1225, or its failure to identify any lawful detention statute, deprived Petitioner of the discretionary custody process required under § 1226(a).

### CLAIM THREE

### RESPONDENTS HAVE NOT SHOWN ANY FINAL REMOVAL ORDER OR § 1231 AUTHORITY SUPPORTING CUSTODY.

103. Petitioner repeats and realleges the preceding paragraphs.

104. Available EOIR automated case information reflects that Petitioner's prior immigration case was dismissed on April 4, 2024.

105. Available EOIR automated case information reflects no future hearings for the prior case.

106. Available EOIR automated case information reflects that no appeal was received.

107. Petitioner was later served with or issued a Notice to Appear dated July 2, 2026.

108. Respondents have not produced any removal order, proof of service, waiver of appeal, BIA appeal record, or other document establishing that § 1231 presently governs detention.

109. Without those records, Respondents have not shown that § 1231 currently applies.

110. Even if Respondents later rely on new charging documents or later proceedings, those documents cannot retroactively validate an unlawful arrest or substitute for the individualized custody process required at the outset.

111. The legality of custody must be judged by the actual grounds and actual authority invoked when the Government took liberty away.

## CLAIM FOUR

### DETENTION WITHOUT A TIMELY, INDIVIDUALIZED CUSTODY DETERMINATION UNDER THE CORRECT STATUTE VIOLATES DUE PROCESS.

112. Petitioner repeats and realleges the preceding paragraphs.

113. Petitioner should have been treated under § 1226(a), not § 1225.

114. Under § 1226(a), DHS was required to make a real, individualized custody determination based on danger and flight risk.

115. DHS did not make a lawful custody determination under the correct statute before or contemporaneous with Petitioner's detention.

116. DHS did not meaningfully consider Petitioner's release factors, including his lack of criminal history, long residence, employment, spouse, two minor children, stable address, and willingness to comply with supervision.

117. DHS did not identify Petitioner as dangerous.

118. DHS did not identify facts showing that Petitioner posed a flight risk sufficient to justify detention.

119. DHS instead detained Petitioner without the process required by § 1226(a) and the Due Process Clause.

120. A later bond hearing, if any, does not cure the absence of a valid initial custody determination. *Gopie v. Lyons*, No. 25-CV-05229-SJB, 2025 WL 3167130 (E.D.N.Y. Nov. 13, 2025).

121. Petitioner is entitled to habeas relief and release.

## CLAIM FIVE

### RESPONDENTS VIOLATED ACCARDI BY FAILING TO FOLLOW BINDING STATUTES AND REGULATIONS.

122. Petitioner repeats and realleges the preceding paragraphs.

123. Under *Accardi v. Shaughnessy*, 347 U.S. 260, 267-68 (1954), an agency must follow its own binding rules.

124. The Second Circuit applies the Accardi doctrine in immigration cases. *Montilla v. I.N.S.*, 926 F.2d 162, 166-69 (2d Cir. 1991).

125. The rules at issue protect liberty.

126. ICE was required to comply with the Fourth Amendment, 8 U.S.C. § 1357(a)(2), 8 C.F.R. § 287.8, 8 C.F.R. § 287.3, 8 C.F.R. § 236.1, and 8 C.F.R. § 1236.1.

127. ICE failed to comply with those rules by arresting and detaining Petitioner without producing a lawful warrant, without showing the escape-risk requirement under § 1357(a)(2), without identifying the correct detention statute, and without a timely individualized custody determination.

128. These failures violated Accardi, the INA, DHS regulations, and due process.

## CLAIM SIX

### A BOND-HEARING REMEDY IS FUTILE OR INADEQUATE HERE.

129. Petitioner repeats and realleges the preceding paragraphs.

130. Petitioner does not ask this Court merely to reweigh bond.

131. Petitioner challenges the Government's threshold authority to arrest and detain him at all.

132. Exhaustion is not jurisdictional in this setting and is excused when administrative remedies are futile, inadequate, or incapable of providing the relief requested. *McCarthy v. Madigan*, 503 U.S. 140, 146-49 (1992); *Howell v. I.N.S.*, 72 F.3d 288, 291 (2d Cir. 1995).

133. A bond hearing cannot cure an unconstitutional arrest, unlawful statutory classification, failure to satisfy § 1357(a)(2), or failure to make a lawful initial custody determination.

134. Habeas is necessary because the administrative process cannot provide prompt and complete relief from unlawful arrest and detention without lawful process.

## CLAIM SEVEN

### RESPONDENTS MUST PRODUCE THE FULL ARREST, CUSTODY, AND IMMIGRATION COURT RECORD NOW.

135. Petitioner repeats and realleges the preceding paragraphs.

136. Section 2243 requires Respondents to certify the true cause of detention.

137. A conclusory declaration is not enough.

138. The Court cannot decide the legality of custody without the actual records.

139. Respondents should be ordered to produce the complete A-file and all arrest, custody, detention, transfer, and removal records.

140. Required records include, but are not limited to: any judicial warrant; any administrative warrant, including Form I-200 or I-205; any Form I-213; any Form I-286; any Form I-862 Notice to Appear; any custody determination form; any bond determination or bond denial; any document identifying § 1225, § 1226, or § 1231 as the basis for custody; any arrest report; any target packet; any operational plan; any supervisory approval; any database query; any body-worn camera footage; any surveillance footage; any family video evidence in DHS possession; any radio transmissions or dispatch records; any property records; the complete Immigration Court record; the April 4, 2024 dismissal order; proof of service; any BIA appeal record; any new July 2, 2026 NTA; and any record supporting Respondents' present detention theory.

141. This is not ordinary discovery. It is the minimum record necessary for habeas review.

142. If Respondents cannot produce records showing lawful arrest and lawful detention authority, the writ should issue and Petitioner should be released.

## CLAIM EIGHT

## PETITIONER PRESERVES HIS REQUEST F[1]OR EAJA FEES.

143. Petitioner repeats and realleges the preceding paragraphs.

144. Petitioner preserves his right to seek attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, if he prevails or obtains the relief requested.

145. EAJA permits fees to a prevailing party in a civil action against the United States unless the Government's position was substantially justified or special circumstances make an award unjust. 28 U.S.C. § 2412(d)(1)(A).

## REQUEST FOR EMERGENCY RELIEF

Petitioner respectfully asks this Court to issue an Order to Show Cause under 28 U.S.C. § 2243 and to enter temporary relief preserving this Court's jurisdiction and Petitioner's access to counsel. Petitioner requests that the Court:

a) prohibit Respondents from transferring Petitioner outside the Eastern District of New York, or outside New York and New Jersey, absent further order of this Court;

b) prohibit Respondents from removing Petitioner from the United States while this habeas action is pending and until further order of this Court;

c) direct Respondents to provide reasonable, timely, confidential access to counsel, including meaningful in-person legal visitation, phone access, and interpreter access as necessary;

d) direct Respondents to file, within forty-eight hours, a full return certifying the statutory and factual basis for detention pursuant to 28 U.S.C. § 2243;

e) require production, within forty-eight hours, of all custodial, administrative, DHS, ICE, warrant, custody, immigration-court, detention, and transfer records supporting Petitioner's arrest and detention;

f) require Respondents to preserve and produce all videos, body-worn camera footage, surveillance footage, radio transmissions, dispatch records, target packets, operational plans, agent notes, and other evidence concerning the arrest;

g) produce Petitioner before this Court as necessary to effectuate meaningful habeas review;

h) grant the writ of habeas corpus and order Petitioner's immediate release from unlawful detention;

i) order that Petitioner shall not be re-detained without notice and an opportunity to be heard before a neutral decisionmaker, where Respondents bear the burden of establishing lawful detention under 8 U.S.C. § 1226(a);

j) order Respondents to return all personal property seized from Petitioner at the time of detention and currently in Respondents' custody, possession, or control;

k) award reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), should Petitioner prevail, and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

s/ S. Michael Musa-Obregon
S. Michael Musa-Obregon, Esq.
MUSA-OBREGON LAW P.C.

_____
1

12

140 Grand Street, Suite 307
White Plains, NY 10601
michael@musa-obregon.com
718-803-1000
Dated: June 17, 2026
New York, New York

## VERIFICATION BY COUNSEL PURSUANT TO 28 U.S.C. § 2242

I submit this verification on behalf of Petitioner because I am one of Petitioner's attorneys. The facts in this Petition are based on information provided by Petitioner's family, available records, counsel's investigation, and counsel's review of the case file. On that basis, I verify that the statements in this Petition are true and correct to the best of my knowledge and belief.

Dated: June 17, 2026

*s/ S. Michael Musa-Obregon*
S. Michael Musa-Obregon, Esq.

13

## CERTIFICATE OF SERVICE

I certify that on June 17, 2026, I caused the foregoing Petition, Emergency Motion, and proposed Order to Show Cause to be served by electronic mail and/or other authorized means on the United States Attorney's Office for the Eastern District of New York, Civil Division, and on counsel for Respondents. I also caused service on Respondents in their official capacities through the United States Attorney as permitted by applicable rule.

*s/ S. Michael Musa-Obregon*

S. Michael Musa-Obregon, Esq.
MUSA-OBREGON LAW P.C.
140 Grand Street, Suite 307
White Plains, NY 10601
michael@musa-obregon.com
718-803-1000
New York, New York

14